Squire Patton Boggs (US) LLP
G. David Godwin (SBN 148272)
david.godwin@squirepb.com
Thomas J. Lloyd (SBN 305507)
thomas.lloyd@squirepb.com
Melanie P. Cockrum (SBN 323685)
melanie.cockrum@squirepb.com
275 Battery Street, Suite 2600
San Francisco, California  94111
Telephone:  +1 415 954 0200
Facsimile:    +1 415 393 9887

Attorneys for Defendant
Continental Casualty Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| MOTIV GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> CONTINENTAL CASUALTY COMPANY, <br><br> Defendant. | Case No. 2:20-cv-09368-ODW-E <br><br> **DEFENDANT CONTINENTAL CASUALTY COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:     January 4, 2021 <br> Time:     1:30 p.m. <br> Crtrm:    5D <br> Judge:    Hon. Otis D. Wright II <br><br> Complaint Filed:     July 2, 2020 |

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1                 **NOTICE OF MOTION AND MOTION TO DISMISS**

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3         NOTICE IS HEREBY GIVEN that on January 4, 2021 at 1:30 p.m., or as

4   soon thereafter as counsel may be heard, before the Honorable Otis D. Wright II, in

5   Courtroom 5D of the First Street Courthouse, located at 350 W. 1st Street, Los

6   Angeles, California 90012, Defendant Continental Casualty Company ("Defendant"

7   or "CCC") will and hereby does move the Court to dismiss Plaintiff Motiv Group,

8   Inc.'s ("Plaintiff" or "Motiv") Complaint in its entirety. This motion is made

9   pursuant to the October 12, 2020 Consent Order transferring this case from the

10   District of New Jersey [Dkt. 22] and following the conferences of counsel pursuant

11   to L.R. 7-3, which took place on October 29 and 30, 2020.

12         Defendant's Motion seeks an order dismissing the Complaint pursuant to

13   Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the

14   Complaint fails to state a claim upon which relief can be granted. Defendant's

15   Motion is based on this Notice of Motion and Motion, the Memorandum of Points

16   and Authorities contained herein, the accompanying Request for Judicial Notice,

17   any reply papers that may be submitted, the arguments of counsel at any hearing

18   that may be held, all of the pleadings, files and records in this proceeding, and any

19   other such matters as the Court may consider at the time of the hearing on the

20   motion.

21

22   Dated: November 4, 2020            Respectfully submitted,

23                                  Squire Patton Boggs (US) LLP

24

25                                  By: */s/ G. David Godwin*

26                                     G. David Godwin
                                        Attorneys for Defendant
                                        Continental Casualty Company

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF FACTS ...................................................................... 2

    A.    The Parties .....................................................................................

    B.    Plaintiff's Alleged Business Losses And The Shelter-In-Place
        Orders.............................................................................................. 3

    C.    The Policy....................................................................................... 4

        1.    Business Income ................................................................... 5

        2.    Extra Expense ....................................................................... 6

    D.     Plaintiff's Insurance Claim And This Lawsuit ................................. 7

II.   ARGUMENT ......................................................................................... 8

    A.    Legal Standard ............................................................................... 8

    B.    All Of Plaintiff's Claims Must Be Dismissed Because The
        Policy Does Not Provide For Coverage For Plaintiff's
        Alleged Losses ............................................................................... 9

        1.    Plaintiff's Claims Against CCC Should Be Dismissed
            Because Plaintiff Did Not Suffer Direct Physical Loss
            Of Or Damage To Property As Required Under The
            Business Income Provisions ...................................... 10

            a.    Plaintiff Does Not Plausibly Allege "Direct
               Physical Loss Of Or Damage To" Plaintiff's
               Property .......................................................... 11

            b.    There Is No Business Income Coverage Because
               There Has Been No "Period Of Restoration"............ 19

        2.    Plaintiff's Claims For Civil Authority Coverage Fail
            Because The Shelter-In-Place Orders Did Not Prohibit
            Access To Plaintiff's Premises ................................. 20

        3.    Plaintiff Fails To State A Claim For Coverage Under
            The Dependent Property Endorsement............................ 23

III.  CONCLUSION.................................................................................... 24

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10E, LLC v. Travelers Indem. Co.*,
No. 2:20-cv-04418-SVW-AS, 2020 U.S. Dist. LEXIS 165252
(C.D. Cal. Sep. 2, 2020) ........................................................................*passim*

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
308 F. Supp. 2d 331 (S.D.N.Y. 2004) ................................................... 21

*AIU Ins. Co. v. Superior Court (FMC Corporation)*,
51 Cal. 3d 807 (Cal. 1990) ...................................................................... 10

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*,
2015 U.S. Dist. LEXIS 34589 (C.D. Cal. Mar. 18, 2015) ................................. 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 8

*Aydin Corp. v. First State Ins. Co.*,
18 Cal. 4th 1183 (Cal. 1998) ......................................................... 1, 5, 9

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990) .................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 8

*Blue Springs Dental Care v. Owners Ins. Co.*,
No. 20-CV-00383-SRB, 2020 U.S. Dist. LEXIS 172639 (W.D. Mo.
Sep. 21, 2020) ........................................................................................ 17

*Boxed Foods Co., LLC v. California Capital Ins. Co.*,
No. 20-cv-04571-CRB, 2020 U.S. Dist. LEXIS 198859 (N.D. Cal.
Oct. 26, 2020) ......................................................................................... 14

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 (2017) ....................................................................... 8, 9

*Carpenter v. PetSmart, Inc.*,
2020 U.S. Dist. LEXIS 35459 (S.D. Cal. Mar. 2, 2020) ...................................... 9

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

010-9132-6290/1/AMERICAS

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................. 9

*Diesel Barbershop, LLC v. State Farm Lloyds*,
  2020 U.S. Dist. LEXIS 147276 (W.D. Tex. Aug. 13, 2020) ....................... 17, 19

*Founder Inst. Inc. v. Hartford Fire Ins. Co.*,
  No. 20-cv-4466-VC, 2020 U.S. Dist. LEXIS 196732 (N.D. Cal.
  Oct. 22, 2020) ................................................................................................... 14

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp.*,
  No. 20-cv-04434 JSC, 2020 U.S. Dist. LEXIS 174010 (N.D. Cal.
  Sep. 22, 2020) ................................................................................................... 14

*Gavrilides Mgmt. Co.* v. *Michigan Ins. Co.*,
  Case No. 20-258-CB-C30 (Ingham County), 2020 Mich. Cir.
  LEXIS 395 (Mich. Cir. Ct. July 1, 2020) .......................................................... 17

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................. 8

*Gov't Empls. Ins. Co. v. Nadkarni*,
  391 F. Supp. 3d 917 (N.D. Cal. 2019) ................................................................. 9

*Hillcrest Optical Inc. v. Cont'l Cas. Co.*,
  No. 1:20-cv-275-JB-B, 2020 U.S. Dist. LEXIS 195273 (S.D. Ala.
  Oct. 21, 2020) ............................................................................................... 19, 20

*Infinity Exhibits v. Certain Underwriters at Lloyd's London*,
  No. 8:20-cv-1605-T-30AEP, 2020 U.S. Dist. LEXIS 182497 (M.D.
  Fla. Sep. 28, 2020) ............................................................................................ 16

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v.
  Nat'l Fire Ins. Co. of Hartford*,
  No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ........................... 21

*Malaube, LLC v. Greenwich Ins. Co.*,
  No. 1:20-cv-22615-KMW, 2020 WL 505181 (S.D. Fla. Aug. 26,
  2020) ............................................................................................................... 8, 17

*Mama Jo's, Inc. v. Sparta Ins. Co.*,
  No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11,
  2018) *aff'd* No. 18-12887, 2020 U.S. App. LEXIS 26103 (11th Cir.
  Aug. 18, 2020) ................................................................................................... 12

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- ii -

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

*Mark's Engine Co. No. 28 Rest. v. Travelers Indem. Co.*,
    No. 2:20-cv-04423-AB-SK, 2020 U.S. Dist. LEXIS 188463 (C.D.
    Cal. Oct. 2, 2020).............................................................................*passim*

*Meridian Textiles, Inc. v. Indem. Ins. Co.*,
    No. CV 06-4766 CAS, 2008 U.S. Dist. LEXIS 91371 (C.D. Cal.
    Mar. 20, 2008) ........................................................................................ 12

*Mortar and Pestle Corp. v. Atain Specialty Ins. Co.*,
    No. 20-cv-03461-MMC (N.D. Cal. Sept. 11, 2020) .............................14, 15, 17

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
    187 Cal. App. 4th 766, 115 Cal. Rptr. 3d 27 (Ct. App. 2010) ...................*passim*

*Mudpie, Inc. v. Travelers Cas. Ins. Co.*,
    No. 20-cv-03213-JST, 2020 U.S. Dist. LEXIS 168385, (N.D. Cal.
    Sep. 14, 2020), (N.D. Cal. Sept. 14, 2020) ......................................14, 16, 18, 19

*Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014) ...........................................................12, 19

*O'Brien Sales & Mktg. v. Transp. Ins. Co.*,
    No. 2:20-cv-002951-MMC (N.D. Cal. Oct. 9, 2020)......................13, 15, 16, 17

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
    No. 20-CV-907-CAB-BLM, 2020 U.S. Dist. LEXIS 182406 (S.D.
    Cal. Oct. 1, 2020).................................................................................... 18

*Pappy's Barber Shops v. Farmers Grp.*,
    No. 20-CV-907-CAB-BLM, 2020 U.S. Dist. LEXIS 166808 (S.D.
    Cal. Sept. 11, 2020) .............................................................................*passim*

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005) .............................................................. 19

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*,
    No. CV 20-6954-GW-SKx, 2020 U.S. Dist. LEXIS 178059 (C.D.
    Cal. Sep. 10, 2020) ..................................................................................13, 15

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*,
    No. CV 20-6954-GW-SKx, 2020 U.S. Dist. LEXIS 182550 (C.D.
    Cal. Sep. 16, 2020) .......................................................................................... 13

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
  311 F.3d 226 (3d Cir. 2002) ............................................................... 12

*Rose's 1, LLC v. Erie Ins. Exch.*,
  Case No. 2020 CA 002424 B, 2020 D.C. Super. LEXIS 10 (D.C.
  Super. Ct. Aug. 6, 2020).................................................................... 17

*Sandy Point Dental v. Cincinnati Ins. Co.*,
  No. 20 CV 2160, 2020 U.S. Dist. LEXIS 171979 (N.D. Ill. Sep. 21,
  2020)................................................................................................. 16

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
  No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010)..................... 21

*Southern Hosp., Inc. v. Zurich Am. Ins. Co.*,
  393 F.3d 1137 (10th Cir. 2004) ................................................... 20, 21

*Studio 417 v. Cincinnati Ins. Co.*,
  No. 20-cv-03127-SRB, 2020 U.S. Dist. LEXIS 147600 (W.D. Mo.
  Aug. 12, 2020) ........................................................................... 17, 18

*Syufy Enters. v. Home Ins. Co.*,
  No. 94-0756 FMS, 1995 U.S. Dist. LEXIS 3771 (N.D. Cal. 1995) ...... 20, 21, 22

*Ticor Title Ins. Co. v. Emp'rs Ins. of Wausau*,
  40 Cal. App. 4th 1699, 48 Cal. Rptr. 2d 368 (Ct. App. 1995) .......................... 10

*Travelers Cas. Ins. Co. of Am. v. Geragos and Geragos*,
  No. 20-cv-03619-PSG-E, 2020 U.S. Dist. LEXIS 196932 (C.D.
  Cal. Oct. 19, 2020)............................................................................. 14

*Tu v. Dongbu Ins. Co.*,
  No. 17-cv-03495-JSC, 2018 U.S. Dist. LEXIS 151322 (N.D. Cal.
  2018)................................................................................................. 21

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  No. 1:20-cv-11655-TLL-PTM, 2020 WL 5258484 (E.D. Mich.
  Sept. 3, 2020)..................................................................................... 16

*Uncork and Create LLC v The Cincinnati Ins. Co.*,
  No. 2:20-cv-00401, 2020 U.S. Dist. LEXIS 204152 (S.D.W.Va.
  Nov. 2, 2020) .............................................................................. 16, 18

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

010-9132-6290/1/AMERICAS

*W. Coast Hotel Mgmt. v. Berkshire Hathaway Guard Ins. Cos.*,
No. 2:20-cv-05663-VAP-DFMx, 2020 U.S. Dist. LEXIS 201161
(C.D. Cal. Oct. 27, 2020) ..............................................................*passim*

*Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*,
114 Cal. App. 4th 548, 7 Cal. Rptr. 3d 844 (Ct. App. 2003) ......................11, 14

*Zaghi v. State Farm Gen. Ins. Co.*,
77 F. Supp. 3d 974 (N.D. Cal. 2015)..................................................10

**Statutes**

Cal. Civ. Code § 1638.........................................................................10

Cal. Civ. Code § 1639.........................................................................10

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(1)...........................................9

Federal Rules of Civil Procedure Rule 12(b)(6).......................................8, 24

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

This case is an insurance coverage action arising out of the COVID-19 pandemic. On behalf of putative classes of CCC insureds, Plaintiff, a retail establishment with two locations in Commerce, California, alleges that its property insurance policy with CCC provides coverage for business interruption losses that it purportedly incurred as a result of COVID-19. Although the global COVID-19 pandemic has disrupted businesses around the world, the unambiguous terms of Plaintiff's policy do not provide coverage for Plaintiff's alleged losses.

*First*, Plaintiff's claims for coverage under the Business Income and Extra Expense Endorsement fail because the plain language of the policy provides that such coverage applies *only* when the suspension of Plaintiff's operations is caused by "direct physical loss of or damage to property." The Complaint does not allege *any* direct physical loss of or damage to Plaintiff's property. Without any direct physical loss of or damage to Plaintiff's property, coverage under the Policy is not triggered, and no recovery is available. Indeed, Courts throughout the country in analogous coverage actions involving COVID-19-related claims—including several courts in this District—have consistently granted insurers' motions to dismiss, holding that the allegations similar to those in Plaintiff's Complaint do not trigger coverage.

*Second*, Plaintiff's claims for coverage under the Civil Authority Endorsement fail because the orders relied upon in the Complaint—Governor Newsom's March 4, 2020 Proclamation of a State Emergency and Executive Order N-33-20 dated March 19, 2020 (the "State Orders"), and the March 19, 2020 order issued by Los Angeles Mayor Eric Garcetti (the "Los Angeles Order" and, collectively with the State Orders, the "Shelter-In-Place Orders")—did not prohibit access to Plaintiff's premises. To the contrary, the Shelter-In-Place Orders were issued to facilitate the treatment of people infected with the virus and to limit

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

-1-

person-to-person contact "to bend the curve" and "disrupt the spread" of the contagion.

*Third*, Plaintiff's claims for coverage under the Business Income – Dependent Property Endorsement fail because Plaintiff does not identify any Dependent Properties, allege any physical loss or damage at any purported Dependent Property, or allege any facts linking Plaintiff's suspension of operations to a loss at a Dependent Property.

For these reasons, as set forth more fully below, Plaintiff is not entitled to coverage under the policy.  Given that Plaintiff has failed to allege the prerequisites for coverage under the policy, the Court need not determine whether any exclusions apply.  Because the Complaint fails to state a claim upon which relief can be granted, the Complaint should be dismissed with prejudice.

## I. STATEMENT OF FACTS

The facts alleged or incorporated by reference in the Complaint, or of which the Court may take judicial notice on this motion, are summarized below.[1]

### A. The Parties

Plaintiff operates a "retail establishment" that has two locations: a store and a stock room, both of which are located in Commerce, California.  (Complaint ¶ 4.) CCC is an insurance company incorporated under the laws of Illinois, with its principal place of business in Chicago, Illinois.  CCC issues insurance policies to policyholders in California and other states.  (*Id.* at ¶ 5.)

---

[1] CCC respectfully requests that the Court take judicial notice ("RJN") of the Shelter-In-Place Orders (RJN Exs. B–D).  (*See, e.g.*, *W. Coast Hotel Mgmt. v. Berkshire Hathaway Guard Ins. Cos.*, No. 2:20-cv-05663-VAP-DFMx, 2020 U.S. Dist. LEXIS 201161, at *6 (C.D. Cal. Oct. 27, 2020) (taking judicial notice of Executive Order N-33-20 and Fresno COVID-19-related shelter-in-place orders.); Here, there can be no question as to the authenticity of the Shelter-In-Place Orders, which are central to Plaintiff's claims for coverage under the Civil Authority endorsement.  (*See* Complaint ¶¶ 38–47.)

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

010-9132-6290/1/AMERICAS

### B.   Plaintiff's Alleged Business Losses and the Shelter-In-Place Orders

The Complaint alleges that Plaintiff suffered business losses because "government authorities issued closure orders to retail establishments . . . in an effort to stop the rapid spread of the deadly COVID-19 virus." (*Id.* ¶ 2.)  The Complaint generally alleges that "The presence of COVID-19 caused direct physical loss of and/or damage to the Insured Property under the Policy by, among other things, damaging the property, denying access to the property, causing the property to be physically uninhabitable by customers and patients, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises." (*Id.* ¶ 45.)

On March 4, 2020, Governor Newsom issued a Proclamation of a State Emergency, which states that the State of California has taken various actions to monitor and plan for the potential spread of COVID-19, preserve public health, and provide guidance to health care facilities and providers. (RJN Ex. B.)  It further notes that, as of March 4, 2020, there were 53 confirmed cases of COVID-19 in California, with more cases expected.  The Proclamation recognizes that, while California has a robust pandemic influenza plan and a strong health care delivery system, "it is imperative to prepare for and respond to suspected or confirmed COVID-19 cases in California, to implement measures to mitigate the spread of COVID-19, and to prepare to respond to an increasing number of individuals requiring medical care and hospitalization . . . ." (*Id.*)  The order set forth in the Proclamation contains 14 items, none of which makes any mention of physical loss of or damage to property. (*Id.*)  Rather, the order is focused on making available all resources to treat patients afflicted with COVID-19. (*Id.*)

On March 19, 2020, Governor Newsom issued Executive Order N-33-20, which, with certain exceptions, requires all residents living in the State of California to stay at home. (RJN Ex. C.)  The express purpose of Executive Order

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

N-33-20 is: "To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability . . . ." (*Id.* at p. 14.)[2]  The Order of the State Public Health Officer, also dated March 19, 2020 (the "Public Health Order"), is made part of the State Order and expressly states: "This Order is being issued to protect the public health of Californians.  The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19.  Our goal is simple, we want to bend the curve, and disrupt the spread of the virus." (*Id.* at 15.)  Nothing in either of the State Orders prohibited access to any property in California.

The Complaint also identifies an order issued on March 19, 2020 by Los Angeles Mayor Eric Garcetti.  The Los Angeles Order required individuals to shelter-in-place and directed certain non-essential businesses to cease in-person operations.  (*See* RJN Ex. D.)  However, like the State Orders, nothing in the Los Angeles Order prohibited access to any property in the City of Los Angeles.

## C.    The Policy

Plaintiff purchased from CCC a CNA Connect Policy, Policy No. B 6025516342, for the period of February 8, 2020 to February 8, 2021 (the "Policy"). (Complaint ¶ 11 & Ex. A at 6.)  The Policy provides both first-party property coverage and liability coverage.  The property coverage, as set forth in the Businessowners Special Property Coverage Form (Form SB-146801-1), and its incorporated Declarations, Endorsements, and Exclusions, is relevant to Plaintiff's claims here.  (*See* Complaint ¶¶ 15–27.)  Specifically, Plaintiff alleges that the Policy includes three endorsements that provide compensation for alleged loss of business income: the Business Income and Extra Expense Endorsement, the Civil Authority Endorsement, and the Business Income and Extra Expense – Dependent

---

[2] Reference to page numbers for Exhibit A (Policy [Dkt. No. 1-3]) are to the ECF page numbers at the top of the page.  Reference to page numbers for the remaining exhibits are to the exhibit page numbers at the bottom of each exhibit.

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

Property ("Dependent Property") Endorsement.  (*Id.* at ¶¶ 15–22.)  The trigger for coverage under each of these endorsements is "direct physical loss of or damage to property" at the insured's premises (under the Business Income and Extra Expense Endorsement), other premises (under the Civil Authority Endorsement), or dependent property (under the Dependent Property Endorsement).  (*Id.* ¶¶ 15, 17, 19, 21–22.)

   *First*, the Business Income and Extra Expense Endorsement allows Plaintiff to recover business income lost as a result of the suspension of its operations due to "direct physical loss of or damage to property" at Plaintiff's premises resulting from a cause of loss insured under the Policy.  The relevant terms of the Policy provide:

   **1.  Business Income**
   **…**
   **b.** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration."  The "suspension" must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.

(Ex. A at 40.)  "Suspension" means the "partial or complete cessation of your [the insured's] business activities" (*id.* at 37), and "operations" means "the type of your [the insured's] business activities occurring at the described premises and tenantability of the described premises" (*id.* at 35).  A "Covered Cause of Loss" means "RISKS OF DIRECT PHYSICAL LOSS" unless excluded or limited under the Policy.  (*Id.* at 19–20.)  The "period of restoration" means the date that "[b]egins with the date of the direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and [e]nds on the earlier of (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location."  (*Id.* at 35.)

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

Extra Expense coverage allows Plaintiff to recover reasonable and necessary expenses incurred during the "period of restoration" that would not have been incurred if there had been no direct physical loss of or damage to the insured's property from a covered cause of loss.  The relevant terms of the Policy provide:

**2. Extra Expense**

    **a.** Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss.

    **b.** We will pay Extra Expense (other than the expense to repair or replace property) to:

        **(1)** Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, . . . ; or

        **(2)** Minimize the "suspension" of business if you cannot continue "operations."

(Ex. A at 41.)

The Dependent Property Endorsement similarly allows Plaintiff to recover business income lost as a result of the suspension of its operations caused by "direct physical loss of or damage to property" at the premises of a Dependent Property resulting from a cause of loss insured under the Policy.  (Complaint ¶¶ 21–22; Ex. A at 153.)  "Dependent Property" includes properties run by others that deliver materials or services, accept products or services, manufacture products for delivery to Plaintiff's customers under a contract of sale, or attract customers to Plaintiff's business.  (Complaint ¶ 22; Ex. A at 153.)

*Second*, Civil Authority coverage allows Plaintiff to recover its lost Business Income and Extra Expense when a civil authority—i.e., a government entity— prohibits access to Plaintiff's premises (here, Plaintiff's store and stock room) because of "direct physical loss of or damage to" property at locations *other than* the insured's premises caused by a Covered Cause of Loss.  This coverage would, for example, cover business interruption if a government entity prohibited access to

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

the insured's premises as a result of a fire in a building across the street from the premises.  The relevant terms of the Policy provide:

**Civil Authority**

**1.** When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises.  The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss.

(Ex. A at 66.)

## D. Plaintiff's Insurance Claim and This Lawsuit

Plaintiff alleges that CCC denied Plaintiff's claims for benefits under the Policy.  (*See* Complaint ¶ 3.)  Plaintiff fails to allege any facts concerning whether it reported any suspension of business operations, the reason for such a suspension (if any), or whether it identified any direct physical loss of or damage to its property.

On July 2, 2020, Plaintiff filed its Complaint (Dkt. 1), which asserts four claims for declaratory judgment against CCC on behalf of a putative class of CCC policyholders, without regard for, among other things, business type, geographic location, the terms and conditions of the insureds' particular policies, or the facts and circumstances of any alleged loss or damage.  Plaintiff's declaratory judgment claims seek declarations that Plaintiff's losses, and those of the putative class members, stemming from the COVID-19 pandemic are insured losses under the Business Income, Extra Expense, Civil Authority, and Dependent Property provisions of their respective policies, which, for the reasons set forth below, are not covered by the terms of the Policy.

///

///

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

010-9132-6290/1/AMERICAS

## II.   ARGUMENT

### A.   Legal Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." (*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).)  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation, citation, and alteration omitted).)

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).) "Factual allegations must be enough to raise a right to relief above the speculative level[.]" (*Twombly*, 550 U.S. at 555.)  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." (*Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted).)  To the extent that the allegations conflict with the exhibit or document in question (here the Policy and Shelter-In-Place Orders), the exhibit controls.  (*See Malaube, LLC v. Greenwich Ins. Co.,* No. 1:20-cv-22615-KMW, 2020 WL 505181, at *4 fn 5 (S.D. Fla. Aug. 26, 2020); *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).)

Even taking Plaintiff's factual, non-conclusory allegations as true, however, the unambiguous terms of the Policy do not permit recovery, and the Complaint should be dismissed.

To the extent plaintiff seeks to assert claims on behalf of nationwide putative classes (Complaint ¶¶ 52–55), CCC does not consent to personal jurisdiction in this Court as to the claims of putative class members that are not residents of the State of California.  (*See Bristol-Myers Squibb Co. v. Superior Court of California*, 137

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

S. Ct. 1773 (2017).)  While there exists a split of authority among the federal courts, including in this district, as to whether *Bristol-Myers Squibb* applies in the context of class actions as opposed to mass torts, CCC contends that the better-reasoned decisions compel a finding that this Court lacks jurisdiction over claims of non-resident, absent class members.  (*See, e.g., Carpenter v. PetSmart, Inc.*, 2020 U.S. Dist. LEXIS 35459, at \*12–13 (S.D. Cal. Mar. 2, 2020) (noting split among federal courts here and elsewhere and "finding that *Bristol-Myers Squibb* applies in the nationwide class action context").)  In addition, Plaintiff lacks standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure to assert claims on behalf of non-California putative class members because the laws of the states of the absent class members would apply to the interpretation of their policies but not to plaintiff's claims.  (*Carpenter*, 2020 U.S. Dist. LEXIS 35459, at \*21–26) (holding that California named plaintiff lacked standing to press "claims on behalf of unnamed class members under other states' laws that do not govern his own claims"); *see also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) ("Courts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce."); (*Am. W. Door & Trim v. Arch Specialty Ins. Co.*, 2015 U.S. Dist. LEXIS 34589, at \*23 (C.D. Cal. Mar. 18, 2015) (state insurance law inherently "varies by state").)

### B.    All of Plaintiff's Claims Must Be Dismissed Because the Policy Does Not Provide For Coverage for Plaintiff's Alleged Losses

It is the insured's burden to establish that the claim is within the scope of insurance coverage.  (*Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1188 (Cal. 1998); *Gov't Empls. Ins. Co. v. Nadkarni*, 391 F. Supp. 3d 917, 925 (N.D. Cal. 2019).)  Accordingly, a complaint seeking a declaration that an insurance agreement provides the asserted coverage must allege sufficient facts to show that the claims fall within the policy's coverage.

Under California law, insurance policies "are contracts to which the ordinary

rules of contract interpretation apply." (*Zaghi v. State Farm Gen. Ins. Co.*, 77 F. Supp. 3d 974, 977 (N.D. Cal. 2015).)  California insurance law requires that the interpretation of a policy give effect to the parties' mutual intentions as of the time of contracting.  (*AIU Ins. Co. v. Superior Court (FMC Corporation)*, 51 Cal. 3d 807, 821 (Cal. 1990).)  "Where contract language is clear and explicit and does not lead to absurd results, [the court] ascertain[s] intent from the written terms and go[es] no further."  (*Ticor Title Ins. Co. v. Empl'rs Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707, 48 Cal. Rptr. 2d 368 (Ct. App. 1995); *see also* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . .").)  Policy terms are applied as defined in the document or, when not defined, read in their ordinary and popular sense.  (*AIU Ins. Co.*, 51 Cal. 3d at 825.)

Where, as here, the insured cannot meet its burden to show that the policy provides the claimed coverage, courts in this District will dismiss the complaint. (*See 10E, LLC v. Travelers Indem. Co.*, No. 2:20-cv-04418-SVW-AS, 2020 U.S. Dist. LEXIS 165252, at *18 (C.D. Cal. Sep. 2, 2020) (dismissing COVID-19-related business interruption insurance coverage claims); *Mark's Engine Co. No. 28 Rest. v. Travelers Indem. Co.*, No. 2:20-cv-04423-AB-SK, 2020 U.S. Dist. LEXIS 188463, at *16 (C.D. Cal. Oct. 2, 2020) (same); *West Coast Hotel Management v. Berkshire Hathaway Guard Insurance Cos.*, No. 20-cv-05663-VAP-DFMx, 2020 U.S. Dist. LEXIS 201161, at *19 (same).)

### 1. Plaintiff's Claims Against CCC Should Be Dismissed Because Plaintiff Did Not Suffer Direct Physical Loss of or Damage to Property as Required Under the Business Income Provisions

The Complaint does not plausibly allege that Plaintiff's claims for business income and extra expense fall within the coverage provisions of the Policy.  The

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

plain language of the Business Income and Extra Expense Endorsement provides coverage for "actual loss of Business Income [Plaintiff] sustain[s] due to the necessary 'suspension' of [Plaintiff's] 'operations' during the 'period of restoration'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the described premises" and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." (Ex. A at 40.) The described premises is defined to mean "[t]he portion of the building which you [Plaintiff] rent, lease or occupy"—in Plaintiff's case, "5437 Sheila St., Los Angeles, CA 90040" and "100 Citadel Dr., Ste. 111, Los Angeles, CA 90040" as set forth in the Policy Declarations—and any portion of the building used by Plaintiff to gain access to its suite. (*Id.* at 8, 40.) The Extra Expense provision similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." (*Id.* at 41; *see also Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 114 Cal. App. 4th 548, 555, 7 Cal. Rptr. 3d 844, 850 (Ct. App. 2003) ("Thus, although the damage covered, loss of income, is not itself a physical loss, the loss of income must be *caused* by a physical loss. . . .") (emphasis in original).)

Because the Complaint does not allege any direct physical loss of or damage to property at Plaintiff's premises (or any Dependent Property), but rather attributes Plaintiff's suspension of its business (and resulting losses) to the Shelter-In-Place Orders, no coverage is available under the Policy.

### a. Plaintiff Does Not Plausibly Allege "Direct Physical Loss of or Damage to" Plaintiff's Property

California courts interpret the phrase "direct physical loss of or damage to property" to require either "direct physical loss of" or "direct physical damage to" property. (*Ward Gen. Ins. Servs., Inc.*, 114 Cal. App. 4th at 554 ("[W]e construe the words 'direct physical' to modify both 'loss of' and 'damage to.'").) "That the loss needs to be 'physical,' given the ordinary meaning of the term, is 'widely held

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'" (*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779, 115 Cal. Rptr. 3d 27, 37 (Ct. App. 2010) (quoting 10A Couch on Insurance, § 148:46 at pp. 148–81).)  Physical loss or damage thus requires that "some *external force* must have acted upon the insured property to cause a *physical change* in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term." (*MRI Healthcare*, 187 Cal. App. 4th at 780 (emphasis in original); *see also Meridian Textiles, Inc. v. Indem. Ins. Co.*, No. CV 06-4766 CAS, 2008 U.S. Dist. LEXIS 91371, at *17 (C.D. Cal. Mar. 20, 2008) (holding that in order to trigger coverage under a physical loss or damage provision, the insured must demonstrate "some tangible change" in the property or "some detectable physical change").)  California law requiring tangible, physical damage to trigger coverage is consistent with authority in other jurisdictions.[3]  Thus, Business Income and Extra Expense claims under the Policy language at issue here are compensable only when the suspension

---

[3] *See, e.g., Newman Myers Kreines Gross, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014), (holding that "[t]he words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure"); *see also, e.g., Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002) ("In ordinary parlance and widely accepted definition, physical damage to property 'means a distinct, demonstrable, and physical alteration' of its structure."); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("'[D]irect physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.") *aff'd* No. 18-12887, 2020 U.S. App. LEXIS 26103 (11th Cir. Aug. 18, 2020) (holding that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'") *id.* at *25, (citing *MRI Healthcare*, 187 Cal. App. 4th at 779)).

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

of business was caused by a demonstrable, physical alteration to the insured's property.

To date, eleven[4] California District Courts have granted insurers' motions to dismiss COVID-19-related coverage claims, including Judge Maxine Chesney's recent decision granting the insurer's motion to dismiss in *O'Brien Sales & Marketing v. Transportation Insurance Co.*, No. 2:20-cv-002951-MMC, (N.D. Cal. Oct. 9, 2020) (RJN Exs. E–F). *O'Brien* involved the same CNA Connect policy forms at issue here (*see* Section I.C. above). In *O'Brien*, the plaintiff, a marketing company in Los Angeles, brought claims for breach of contract and declaratory relief against its insurer, Transportation Insurance Company (an affiliate of CCC), for lost business income allegedly resulting from the COVID-19 pandemic and the State Orders. In granting the insurer's motion to dismiss, the court found that allegations of the presence of coronavirus on the property are not sufficient to trigger coverage. (RJN Ex. F at 29:4–10.) The court followed *MRI Healthcare* and held the operative policy language—the same language at issue here—requiring "direct physical loss of or damage to" property is not ambiguous, and that "when you are looking at a COVID restriction of this nature, that coverage is not provided under the particular policy language." (RJN Ex. F at 30:4–13.)

In addition to *O'Brien*, California District Courts have uniformly granted insurers' motions to dismiss loss of business income coverage claims in: *10E, LLC v. Travelers Indemnity Co.*, No. 2:20-cv-04418-SVW-AS, 2020 U.S. Dist. LEXIS 165252, at *18 (C.D. Cal. Sep. 2, 2020); *Pappy's Barber Shops v. Farmers Group*, No. 20-CV-907-CAB-BLM, 2020 U.S. Dist. LEXIS 166808, at *16 (S.D. Cal.

---

[4] In another recent COVID-19-related business interruption case, *Plan Check Downtown III, LLC v. AmGuard Insurance Co.*, the plaintiff dismissed its case with prejudice following Judge Wu's statement that he intended to adopt his thorough and well-reasoned tentative ruling granting the defendant insurer's motion to dismiss. (*See Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. CV 20-6954-GW-SKx, 2020 U.S. Dist. LEXIS 178059, at *16 (C.D. Cal. Sep. 10, 2020); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, No. CV 20-6954-GW-SKx, 2020 U.S. Dist. LEXIS 182550, at *1 (C.D. Cal. Sep. 16, 2020).)

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

Sept. 11, 2020); *Mortar and Pestle Corp. v. Atain Specialty Insurance Co.*, No. 20-cv-03461-MMC, (N.D. Cal. Sept. 11, 2020) (RJN Ex. G); *Franklin EWC, Inc. v. Hartford Financial Services Group*, No. 20-cv-04434 JSC, 2020 U.S. Dist. LEXIS 174010 (N.D. Cal. Sep. 22, 2020); *Mudpie, Inc. v. Travelers Casualty Insurance Co.*, No. 20-cv-03213-JST, 2020 U.S. Dist. LEXIS 168385, at \*23 (N.D. Cal. Sep. 14, 2020), (N.D. Cal. Sept. 14, 2020); *Mark's Engine Co. No. 28 Restaurant v. Travelers Indem. Co.*, No. 2:20-cv-04423-AB-SK, 2020 U.S. Dist. LEXIS 188463, at \*16–17 (C.D. Cal. Oct. 2, 2020); *Travelers Casualty Insurance Company of America v. Geragos and Geragos*, No. 20-cv-03619-PSG-E, 2020 U.S. Dist. LEXIS 196932 (C.D. Cal. Oct. 19, 2020); *Founder Institute Inc. v. Hartford Fire Insurance Co.*, No. 20-cv-4466-VC, 2020 U.S. Dist. LEXIS 196732 (N.D. Cal. Oct. 22, 2020); *Boxed Foods Co., LLC v. California Capital Insurance Co.*, No. 20-cv-04571-CRB, 2020 U.S. Dist. LEXIS 198859, at \*18 (N.D. Cal. Oct. 26, 2020); and *West Coast Hotel Management v. Berkshire Hathaway Guard Insurance Cos.*, No. 20-cv-05663-VAP-DFMx, 2020 U.S. Dist. LEXIS 201161, at \*19 (C.D. Cal. Oct. 27, 2020).  These decisions held that allegations similar to those in Plaintiff's Complaint do not trigger business income, extra expense, or civil authority coverage.

In *10E, LLC,* the plaintiff, a restaurant in Los Angeles, brought claims for breach of contract and breach of the implied covenant against its insurer, Travelers, for lost business income allegedly resulting from the COVID-19 pandemic.  (*10E, LLC*, 2020 U.S. Dist. LEXIS 165252 at \*2–3.)  Relying on *MRI Healthcare* and *Ward*, the court noted that: "Under California law, losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase."  (*Id.* at \*12–13.)  The court further held that: "An insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property."  (*Id.* at \*13.)

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    The court in *10E, LLC* also rejected the same "loss of use" argument that

2    Plaintiff alleges here, holding that:

3         Even if the Policy covers 'permanent dispossession' in addition to
         physical alteration, that does not benefit Plaintiff here. Plaintiff's FAC
4         does not allege that it was permanently dispossessed of any insured
         property. . . .
5

6         The Court therefore concludes that Plaintiff has not alleged facts
         plausibly supporting an inference that it is entitled to coverage under
7         the Policy.

8

9    (*Id.* at *14–15 (internal citations omitted).) Because the plaintiff failed to allege

10   that it was entitled to coverage under the policy, the court granted the insurer's

11   motion to dismiss. (*Id.* at *18.)

12       The courts in *O'Brien*, *Pappy's*, *Mark's Engine*, *Mortar and Pestle*, *Plan*

13   *Check*, and *West Coast Hotel* all found the reasoning in *10E, LLC* persuasive, and

14   concluded that under the California standard espoused in *MRI Healthcare*, the

15   plaintiffs had failed to allege the requisite direct physical loss of or damage to their

16   properties. (*O'Brien*, No. 2:20-cv-002951-MMC, (RJN Ex. F, at 30:8–13); *Pappy's*

17   *Barber Shops*, 2020 U.S. Dist. LEXIS 166808, at *16; *Mark's Engine Co. No. 28*

18   *Rest.*, 2020 U.S. Dist. LEXIS 188463, at *16–17; *Mortar and Pestle Corp.* (RJN

19   Ex. H, at 34:14–16 ("We're all living where we're living. Our houses are not

20   uninhabitable. Our places of work are not uninhabitable by reason of physical

21   damage."); *Plan Check*, 2020 U.S. Dist. LEXIS 178059, at *16 ("Plan Check's

22   theory of relief is a major departure from established California law."); *W. Coast*

23   *Hotel Mgmt.*, 2020 U.S. Dist. LEXIS 201161, at *9 (holding that direct physical

24   loss of or damage to property "plainly requires, at minimum, that the loss or

25   damage be physical in nature.").)

26       Multiple courts have specifically rejected the expansive interpretation of

27   "direct physical loss" that Plaintiff argues here, noting that "such an interpretation

28   of any insurance policy would be without any 'manageable bounds.'" (*See Plan*

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

*Check*, 2020 U.S. Dist. LEXIS 178059, at \*14 (finding the insured's interpretation to be unreasonable); *Mark's Engine*, 2020 U.S. Dist. LEXIS 188463, at \*12 (citing *Plan Check*); *O'Brien*, No. 2:20-cv-002951-MMC, (RJN Ex. E, at 29:3–15) ("I still come down to the bottom line that there is nothing really wrong with the restaurant ….); *see also Mudpie, Inc.*, 2020 U.S. Dist. LEXIS 168385, \*10 (rejecting plaintiff's "direct physical loss of" argument, noting that "[w]hen the Stay at Home orders are lifted, [the insured] can regain possession of its storefront."); *W. Coast Hotel Mgmt.*, 2020 U.S. Dist. LEXIS 201161, \*10–11 ("Plaintiffs cannot state a legally cognizable claim based on the temporary loss of use of property alleged here.").)

        Courts in other jurisdictions considering analogous COVID-19 business interruption claims have also overwhelmingly dismissed actions for failure to allege or establish direct physical loss of or damage to property.  (*See, e.g. Uncork and Create LLC v The Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 U.S. Dist. LEXIS 204152, at \*13 (S.D. W.Va. Nov. 2, 2020) (granting insurer's motion to dismiss, finding that "even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property."); *Infinity Exhibits v. Certain Underwriters at Lloyd's London*, No. 8:20-cv-1605-T-30AEP, 2020 U.S. Dist. LEXIS 182497, at \*12 (M.D. Fla. Sep. 28, 2020) (granting a motion to dismiss, holding that a Florida governmental order mandating the closure of non-essential businesses did not constitute direct physical loss of or damage to property); *Sandy Point Dental v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 U.S. Dist. LEXIS 171979, at \*7 (N.D. Ill. Sep. 21, 2020) (granting a motion to dismiss, holding that "The coronavirus **does not physically alter** the appearance, shape, color, structure, or other material dimension of the property.  Consequently, plaintiff has failed to plead a direct physical loss—a prerequisite for coverage.") (emphasis added); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 1:20-cv-11655-TLL-PTM, 2020 WL 5258484, at \*8 (E.D. Mich. Sept. 3, 2020) (granting

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   a motion to dismiss, finding that "direct physical loss" was an "unambiguous term
2   that plainly require[d] [p]laintiff to demonstrate some tangible damage"); *Malaube*,
3   2020 WL 505181, at *8 (granting a motion to dismiss, finding that plaintiff's
4   economic losses did not constitute "actual damage" as required to trigger coverage
5   for "direct physical loss"); *Diesel Barbershop, LLC v. State Farm Lloyds*, 2020
6   U.S. Dist. LEXIS 147276 at *16 (W.D. Tex. Aug. 13, 2020), (granting a motion to
7   dismiss, recognizing that controlling Fifth Circuit precedent requires the loss "to
8   have been a 'distinct, demonstrable physical alteration of the property.'" (citations
9   omitted)); *Rose's 1, LLC v. Erie Ins. Exch.*, Case No. 2020 CA 002424 B, 2020
10  D.C. Super. LEXIS 10, at *12–13 (D.C. Super. Ct. Aug. 6, 2020), (granting
11  summary judgment in favor of defendants, holding that "'direct loss' implies some
12  form of direct physical change to the insured property"); *Gavrilides Mgmt. Co.* v.
13  *Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Ingham County), 2020 Mich. Cir.
14  LEXIS 395 (Mich. Cir. Ct. July 1, 2020).)

15          In contrast, in the few cases that have survived motions to dismiss (three of
16  which were decided by the same Judge in the Western District of Missouri), the
17  courts applied an expansive definition of "physical loss" that is incompatible with
18  California law under *MRI Healthcare*.  (*See Studio 417 v. Cincinnati Ins. Co.*, No.
19  20-cv-03127-SRB, 2020 U.S. Dist. LEXIS 147600, at *11–12 (W.D. Mo. Aug. 12,
20  2020); *Blue Springs Dental Care v. Owners Ins. Co.*, No. 20-CV-00383-SRB, 2020
21  U.S. Dist. LEXIS 172639, at *11–12 (W.D. Mo. Sep. 21, 2020).  Moreover, the
22  same court in both *Studio 417* and *Blue Springs Dental Care* placed significant
23  weight on those plaintiffs' specific allegations regarding the actual presence of the
24  coronavirus on insureds' premises.  Plaintiff's Complaint here contains no such
25  allegations.  Even if it had, however, the Court should follow the more persuasive
26  reasoning of the California District Courts in *O'Brien* (finding that allegations of
27  the mere presence of the coronavirus without any distinct, demonstrable, physical
28  alteration of the property are not sufficient to trigger coverage) and *Mortar and*

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

*Pestle*, *10E, LLC*, *Pappy's*, *Mudpie*, *Mark's Engine,* and *West Coast Hotel* (which uniformly hold that under California law, COVID-19 and related closure orders do not constitute direct physical loss of or damage to property). (*See, also, W. Coast Hotel Mgmt.*, 2020 U.S. Dist. LEXIS 201161, \*11 n.4 (declining to follow *Studio 417*).)

Here, Plaintiff's Complaint contains no allegation that the coronavirus that causes COVID-19 physically altered or changed Plaintiff's property. Plaintiff cannot cure this deficiency, as the presence of the coronavirus does not constitute direct physical loss or damage.[5] Plaintiff also does not allege that any property at its premises was permanently misplaced or lost, such as to constitute a "direct physical loss of" such property. Instead, the purported "damage" or "loss" that Plaintiff alleges the coronavirus caused was neither direct nor physical, but rather economic damage resulting from the Shelter-In-Place Orders. Thus, Plaintiff's allegation that its business operations were suspended as a result of the presence of COVID-19 and the Shelter-In-Place Orders fails to allege any "actual, demonstrable harm of some form" to Plaintiff's premises (under the Business Income and Extra Expense Endorsement), other property (under the Civil Authority Endorsement), or dependent property (under the Dependent Property Endorsement), as required for coverage under the Policy. (*See*, *Uncork & Create LLC*, 2020 U.S. Dist. LEXIS 204152, at \*9 ("The novel coronavirus has no effect on the physical premises of a business. Non-essential businesses were ordered to shut down to prevent people

---

[5] *See Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907-CAB-BLM, 2020 U.S. Dist. LEXIS 182406, at \*2–3 (S.D. Cal. Oct. 1, 2020) ("[T]he presence of the virus itself, or of individuals infected with the virus, at Plaintiffs' business premises or elsewhere do not constitute direct physical losses of or damage to property."); *Uncork & Create LLC,* 2020 U.S. Dist. LEXIS 204152, at \*13 "[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered 'loss' is required to invoke the additional coverage for loss of business income under the Policy.")

- 18 -

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

from exposing one another."); *Diesel Barbershop, LLC et al.*, 2020 U.S. Dist. LEXIS 147276, at *15–16, 21); *Newman Myers*, 17 F. Supp. 3d at 331.)

Because the Complaint does not allege any direct physical loss of or damage to Plaintiff's property or other property, each of Plaintiff's claims against CCC fails as a matter of law.

### b.  There Is No Business Income Coverage Because There Has Been No "Period of Restoration"

The Business Income coverage that Plaintiff seeks is also limited to the "period of restoration." (Ex. A at 25.) This period "[b]egins with the date of *direct physical loss or damage*" and ends on the earlier of the "date when the property at the described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar quality; or the date when business is resumed at a new permanent location." (*Id.* at 35 (emphases added).) That the coverage does not begin until the "direct physical loss or damage" occurs and ends when the property is "repaired, rebuilt or replaced" further confirms that, without direct physical loss or damage, there is no coverage at all. (*See Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (the terms "'rebuild,' 'repair,' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature"); *see also Mudpie, Inc.*, 2020 U.S. Dist. LEXIS 168385, at *11 (citing *Philadelphia Parking* and concluding "here, there is nothing to fix, replace, or even disinfect for Mudpie to regain occupancy of its property . . . ."); *W. Coast Hotel Mgmt.*, 2020 U.S. Dist. LEXIS 201161, *10 ("Plaintiffs do not claim that any property has undergone a physical alteration or needs to be 'repaired, rebuilt, or replaced.'").)

In an analogous COVID-19 business interruption case against CCC brought in the Southern District of Alabama, *Hillcrest Optical Inc. v. Continental Casualty Co.*, No. 1:20-cv-275-JB-B, 2020 U.S. Dist. LEXIS 195273 (S.D. Ala. Oct. 21, 2020), the plaintiff alleged that an Alabama shelter-in-place order triggered coverage under CCC's policy provisions. Citing to decisions in other jurisdictions,

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

including *Pappy's* in California, the court in *Hillcrest Optical* held that the Alabama shelter-in-place order did not result in direct physical loss of the plaintiff's property, and therefore did not trigger coverage under CCC's policy. (*Id.* at *20–21.)  The court found support for its holding in the "period of restoration" requirement (*see* Complaint ¶ 15), which the court concluded "[r]ead in the context with 'direct physical loss of property,' a 'period of restoration' can occur only by virtue of a repairable, rebuildable, or replaceable physical alteration of covered property." (*Id.* at *20–21.)  As the court correctly noted, "Plaintiff was not dispossessed of its property due to the Order, nor was there any tangible alteration to it.  Plaintiff's inability to use its property was not caused by an unsound and or unhealthy condition of the property itself which necessitated repair, rebuilding or replacement." (*Id.*)  Because there was no basis for coverage under the CCC policy, the court granted CCC's motion to dismiss, with prejudice. (*Id.*)

Here, there is no period of restoration because there has been no direct physical loss of or damage to Plaintiff's property.  The Complaint does not allege any physical damage to Plaintiff's premises requiring repair, rebuilding, or replacement.  The Complaint simply quotes the Policy provision (*see* Complaint ¶ 21) without pleading a "period of restoration" or identifying any repairs necessitated by any supposed property damage.

### 2. Plaintiff's Claims for Civil Authority Coverage Fail Because The Shelter-In-Place Orders Did Not Prohibit Access to Plaintiff's Premises

In order to trigger coverage under the Civil Authority Endorsement, the governmental action must expressly prohibit access to Plaintiff's premises, which unambiguously means a complete bar to entry. (Ex. A at 66 (requiring that the civil authority action "prohibit[] access to the described premises"); *Southern Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140–41 (10th Cir. 2004) (citing cases from various states); *see also Syufy Enters. v. Home Ins. Co.*, No. 94-0756 FMS, 1995

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

U.S. Dist. LEXIS 3771 at *5 (N.D. Cal. 1995) (the "civil authority must specifically deny access to [the insured's premises].  Here, no civil authority ever specifically prohibited any individual from entering [the insured's premises]."); *Tu v. Dongbu Ins. Co.*, No. 17-cv-03495-JSC, 2018 U.S. Dist. LEXIS 151322 at *26–27 (N.D. Cal. 2018) (coverage would apply if "a covered cause of loss caused damage to the street in front of the [insured premises], and a civil authority closed the [insured premises] because of that damage.").)

It is not enough that the civil authority order merely hampered or discouraged access to the insured's premises.  (*See Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *1, 5 (M.D. Pa. July 6, 2010) (no coverage when order closed main road that 70 percent—but not 100 percent—of patrons used to access ski resort); *Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, No. 06-770-C, 2007 WL 2489711, at *6 (M.D. La. Aug. 29, 2007) (claim failed when plaintiff closed its office to comply with advisories recommending that residents remain home after hurricane despite no orders forbidding or blocking access to premises); *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335–36 (S.D.N.Y. 2004) (after full prohibition of access lifted, plaintiff had no civil authority claim even though traffic restrictions continued to hamper access to premises).)  Nor is it sufficient that a civil authority's closure of other businesses causes a loss of income to the insured; the civil authority must prohibit access to the *insured's* premises specifically.  (*Southern Hosp.*, 393 F.3d at 1140–41 (no recovery after 9/11 for hotel operator because, although FAA's order grounding planes greatly depressed hotels' business, it did not close hotels); *see also United Air Lines*, 439 F.3d at 134–35; *Ski Shawnee*, 2010 WL 2696782, at *5.)

In *Syufy Enterprises*, 1995 U.S. Dist. LEXIS 3771, the court denied a business interruption claim by a movie theater operator that had suspended its business operations when, following the Rodney King verdict, civil authorities in

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

several large cities imposed a dawn-to-dusk curfew to quell potential rioting and looting.  The policy in question covered business income loss where "as a direct result of damage to or destruction of property adjacent to the premises herein described by the peril(s) insured against, access to such described premises is specifically prohibited by order of civil authority."  (*Id.* at *2.)  The court held that the civil authority provision was not triggered for two reasons: first, no order ever "*specifically* prohibited any individual from entering a theater," and second, the policy required that the civil authority order must be "a *direct result* of damage to or destruction of property adjacent" to the insured's property, not a curfew imposed to prevent future rioting and property damage.  (*Id.* at *5 (emphases in original).)

Civil Authority coverage does not apply here for the same reasons as in *Syufy Enterprises*.  As California District Courts have confirmed, the Shelter-In-Place Orders do not prohibit access to Plaintiff's premises.  (*See 10E, LLC,* 2020 U.S. Dist. LEXIS 156827 at *13–14 ("As far as the FAC reveals, while public health restrictions kept the restaurant's 'large groups' and 'happy-hour goers' at home instead of in the dining room or at the bar, Plaintiff remained in possession of its dining room, bar, flatware, and all of the accoutrements of its 'elegantly sophisticated surrounding."); *Pappy's*, 2020 U.S. Dist. LEXIS 166808, at *15 (Finding that Executive Order N-33-20 (and an order by the Mayor of San Diego) "prohibit the operation of Plaintiff's business: they do not prohibit access to Plaintiffs' place of business.").)

Indeed, in dismissing claims for civil authority coverage, the court in *Mark's Engine* held that the same Los Angeles Order issued by Mayor Garcetti relied upon by Plaintiff here did not cause "'direct physical loss of' [plaintiff's] property as [plaintiff] always had complete access to the premises even after the order was issued." (*Mark's Engine Co. No. 28 Rest.*, 2020 Dist. LEXIS 188463, at *13.) However Plaintiff may mischaracterize them, the fact remains that on their face, the Shelter-In-Place Orders do not prohibit access to *any* premises, let alone Plaintiff's

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

premises in particular.  (*See* RJN Exs. B–D.)  For this additional reason, the Complaint does not plausibly allege facts showing that Plaintiff is entitled to coverage under the Civil Authority Endorsement, and Plaintiff's claims should be dismissed.

### 3. Plaintiff Fails To State a Claim for Coverage Under the Dependent Property Endorsement

Plaintiff's claim for Dependent Property coverage requires that it show "direct physical loss of or damage to property" at a Dependent Property, i.e., a property operated by someone the insured "depend[s] on," such as a supplier, customer, manufacturer, or "leader" attracting customers to the insured's business. (Ex. A at 153.)  Here, Plaintiff does not identify *any* Dependent Properties.  Instead, the Complaint contains only a conclusory allegation that recites the applicable standard.  (Complaint ¶ 47 ("Plaintiff also has sustained business income losses due to direct physical loss or physical damage at the premises of dependent properties.").)  Plaintiff also fails to allege any "direct physical loss of or damage" at a Dependent Property, or any facts connecting any alleged "suspension" of Plaintiff's "operations" to such loss or damage.  To the contrary, the Complaint makes clear that Plaintiff's suspension of its operations was caused by the Shelter-In-Place Orders, not by any purported loss or damage at any dependent property. (*See* Complaint ¶ 36 ("The presence of COVID-19 has caused civil authorities throughout the country to issue order requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business").)

Therefore, the Complaint does not allege any facts showing that Plaintiff is entitled to coverage under the Dependent Property Endorsement, and Plaintiff's claims should be dismissed.

///

///

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E

### III.   CONCLUSION

For all of the reasons stated above, Plaintiff's alleged business interruption losses from the COVID-19 pandemic simply do not trigger coverage under the Policy, and no amount of discovery can change that outcome.  Accordingly, CCC respectfully requests that the Court dismiss the Complaint with prejudice under Rule 12(b)(6).

Dated:  November 4, 2020                    Squire Patton Boggs (US) LLP


By: */s/ G. David Godwin*
                                                    G. David Godwin
                                            Attorneys for Defendant
                                            Continental Casualty Company

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:20-CV-09368-ODW-E